**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| ELVIRA QUINONEZ-CASTELLANOS,<br><br>Plaintiff,<br><br>vs.<br><br>PERFORMANCE CONTRACTORS, INC., and KENDEL WOOD, ANDREW MOREL, and JAMES EHLENBACH, Individually and in their Corporate Capacities,<br><br>Defendants. | No. 16-cv-4097-LTS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL** |

*I.     INTRODUCTION*

This matter is before the Court pursuant to Plaintiff's Motion to Compel Discovery. (Doc. 29).[1] The instant motion is timely. *See* LR 37(c) ("[M]otions to compel must be filed within 14 days after the discovery deadline."). Plaintiff's motion was filed on June 8, 2017, which was prior to the June 26, 2017 discovery deadline. Defendants timely filed a resistance on June 22, 2017. (Doc. 30). *See* LR 7(e) (a resistance is due no later than fourteen days after service of the initial motion). Plaintiff timely filed a motion to file an

---

[1] Document No. 29 is docketed as plaintiff's Motion to Amend Plaintiff's Motion to Compel filed at Document No. 28. However, a thorough examination of Document No. 29 reveals that Document 29 was simply misfiled and is actually a Motion to Compel that was filed as a substitute to Document No. 28. To the extent that a motion to amend may be pending, it is hereby **granted**.

overlength reply on June 29, 2017, and this Court granted leave to file said overlength brief. (Docs. 31, 34). *See* LR 7(g) ("[T]he moving party may, within 7 days after a resistance to a motion is served, file a reply brief."). This Court heard oral argument upon Plaintiff's request on July 10, 2017. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's Motion to Compel Discovery.

## II. FACTUAL HISTORY

The relevant facts of this case are as follows:

Plaintiff filed her Amended Complaint and Demand for Jury Trial on August 9, 2016, in the Northern District of Iowa alleging: (1) retaliation under Iowa law; (2) sex discrimination under Iowa law; (3) retaliation under the federal Civil Rights Act of 1964; and (4) sex discrimination under the federal Civil Rights Act of 1964.[2] There is no dispute that plaintiff was employed by defendant Performance Contractors from approximately May 2015 through October 2015. Plaintiff's employment was thereafter terminated; the cause of plaintiff's termination gave rise to the instant litigation.

Performance Contractors is an industrial contractor employing approximately 8,000 employees to perform construction, turnaround, and maintenance services at approximately 80 different worksites across the country. The number of employees located at each worksite varies, and each worksite may have its own management structure, depending on the number of employees located at that site. Plaintiff was hired to an unskilled position at a worksite in Sioux City, Iowa. Defendant Andrew Morel was the Field Human

---

[2] Note that Plaintiff originally filed her Complaint and Demand for Jury Trial in the Iowa District Court for Woodbury County on June 2, 2016; however, Defendant sought removal and this case was removed to the Northern District of Iowa on July 5, 2016. Plaintiff subsequently filed the above-referenced Amended Complaint and Demand for Jury Trial.

Resources Manager at the Sioux City jobsite and was thus responsible for handling human resources affairs, such as the one presented in the instant case, when they arose at the Sioux City jobsite. Defendants James Ehlenbach and Kendel Wood were plaintiff's supervisors; both parties agree that neither Ehlenbach nor Wood played a role in the decision to terminate plaintiff.

Plaintiff alleges that she was discriminated against based on her Hispanic heritage and her sex—as a woman in a male-dominated industry—and faced direct retaliation when she submitted a formal written complaint to the human resources department detailing her allegations of discrimination. Specifically, plaintiff claims that she was initially subject to a three-day suspension for insubordination but, upon raising the issue of discrimination, plaintiff was summarily terminated from her employment with Performance Contractors by defendant Morel. In contrast, defendants contend that the sole reason for plaintiff's termination was insubordination. Following plaintiff's termination, the corporate human resources office based out of Baton Rouge, Louisiana launched an investigation into the situation and ultimately upheld plaintiff's termination. Plaintiff contends that this investigation amounts to part of the decision-making process to terminate plaintiff while defendants argue that the investigation simply constituted an internal appeals process.

### III. PROCEDURAL HISTORY

The deadline for completion of discovery was June 26, 2017. (Doc. 27). A jury trial is scheduled for December 18, 2017, before the Honorable United States District Court Chief Judge Leonard T. Strand. (Doc. 18).

In the instant motion, plaintiff seeks more complete responses to plaintiff's interrogatories and requests for production of documents served on defendants; an additional sixty days during which to depose additional witnesses whose identities become

known as a result of the aforementioned discovery requests; and the imposition of sanctions on defendants. The discovery requests and materials exchanged in this case are expansive; the contested discovery matters are detailed below.

## IV. STANDARDS FOR MOTION TO COMPEL

### A. *Meet-and-Confer*

A party moving to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1); *see also* LR 37(a). Alternatively, counsel may certify in a written declaration that such a personal conference was impossible "and describe the efforts undertaken to schedule the conference. An exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this [rule]." LR 37(a). The importance of the meet-and-confer requirement is not to be diminished. *See Williams v. Cent. Transp. Int'l., Inc.*, No. 4:13-CV-2009 (CEJ), 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014) ("The meet-and-confer requirement is 'not an empty formality.'").

Plaintiff's counsel has attached to the instant motion the requisite declaration stating that plaintiff's counsel has met and conferred with defendants' counsel in good faith. (Doc. 28-13). Furthermore, the numerous exhibits attached by the parties evidence extensive communications between counsel, both via email and telephone. Therefore, the Court finds that plaintiff did, in good faith, engage in meaningful communication with defendant on the instant discovery issues prior to seeking court intervention. Thus, the meet-and-confer requirement is satisfied.

### B. *Relevance and Proportionality*

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Rule 26(b) is widely acknowledged as "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). Additionally, in the context of discovery, the standard of relevance is "broader" than in the context of admissibility. (*Id*. (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978))). Yet, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." (*Id*.).

Rule 401 of the Federal Rules of Evidence reads: "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Catipovic v. Turley*, No. C11-3074, 2013 WL 1718061, at *2 (N.D. Iowa Apr. 19, 2013) (internal quotation marks and citation omitted).

The party requesting discovery bears the burden of making a threshold showing that the requested discovery would be relevant; once this threshold has been met, the burden of proving irrelevance shifts to the party resisting the motion to compel. *Hofer*, 981 F.2d at 380 (holding that the proponent of discovery bears the initial burden of establishing relevance); *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D. 682, 684-85

(D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." (internal citation omitted)). A party objecting to discovery must state its objections with particularity and may not merely base its objections on allegations that the requested discovery is "overly broad, burdensome, oppressive and irrelevant." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (internal quotation marks and citations omitted). Instead, the objecting party must prove that the "requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (*Id.* (internal quotation marks and citation omitted)). When a discovery request is overbroad, it may be considered disproportionate to the needs of the case. *Nachurs v. Alpine Solutions, Corp. v. Nutra-Flo Co.*, No. 15-CV-4015-LTS, 2017 WL 1380460, at *4 (N.D. Iowa Apr. 17, 2017); *see generally Maxtena v. Marks*, 289 F.R.D. 427, 434 (D. Md. 2012) (reading the proportionality requirement to limit, *inter alia*, duplicative and overly burdensome discovery).

V.  ANALYSIS

Plaintiff seeks the following: (1) "complete responses" on a company-wide basis to Interrogatory Nos. 15, 16, and 19; (2) "complete responses" to Request for Production Nos. 41, 53, 60, 61, 68, 70, and 72; (3) an additional sixty days during which to depose additional witnesses whose identities become known as a result of the aforementioned discovery requests; and, (4) the award of attorneys' fees and costs. (Doc. 28). Plaintiff's primary arguments in support of her motion are that (1) the requested information is

relevant and necessary to establish a corporate pattern of discrimination and retaliation; and (2) that defendants have failed to assert objections sufficient to excuse the non-disclosure of the requested discovery.

### A. *Compelling Discovery*

Although Title VII cases are governed by "liberal civil discovery rules [that] give plaintiffs broad access to employers' records [to] . . . document their claims" and prove a discriminatory motive, such discovery must be limited to the employment practices at issue in the case, and the discovery of information pertaining to other employees must be limited to those employees who are similarly situated. *Wards Cove Packing Co., Inc. v. Antonio*, 490 U.S. 642, 657 (1989); *Burns v. Hy-Vee, Inc.*, No. Civ. 02-254 (JRTFLN), 2002 WL 31718432, at *2 (D. Minn. Nov. 21, 2002) (providing that when discrimination is alleged, "the discovery of information concerning other employees should be limited to those employees who are similarly situated") (internal citations omitted).

The Eighth Circuit Court of Appeals has clearly stated that "a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information." *Semple v. Fed. Express Corp.*, 566 F.3d 788, 794 (8th Cir. 2009) (citing *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997)). The Eighth Circuit has noted that company-wide discovery is "usually not helpful in establishing pretext in an employment discrimination case, because those who make employment decisions vary [geographically]." *Carman*, 114 F.3d at 792. Further, when management personnel located in a different geographic region from the location of the alleged misconduct were only involved in the internal appeals process of a termination decision and not the termination itself, the plaintiff was not entitled to company-wide discovery. *Semple*, 566 F.3d at 794. Absent a particularized argument that the review of

plaintiff's termination by corporate human resources personnel represented more than a mere internal appeals process and, rather, evidenced a corporate policy of discrimination or retaliatory conduct, company-wide discovery is not warranted. *See Carman*, 114 F.3d at 792 (holding that a particularized argument was necessary to show how company-wide information would be helpful in establishing pretext).

Plaintiff is, however, entitled to such discovery as would further her claims of discriminatory and retaliatory conduct by the specific individual who purportedly acted improperly. (*See, e.g.*, *id.* (suggesting that when pretext is alleged in an employment discrimination action, the previous employment decisions of the decision-maker are relevant)). However, the time period concerning the requested discovery must be "reasonable." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005); *Burns*, 2002 WL 31718432, at *2.

Plaintiff contends that defendant failed to provide "complete" responses to Interrogatory Nos. 15, 16, and 19 and to Request for Production Nos. 41, 53, 60, 61, 68, 70, and 72. (Doc. 29, at 5). The subject Interrogatories and Requests for Production[3] propounded by plaintiff are set forth below:

> Interrogatory No. 15: For the period from January 1, 2012 to the present, identify by name, address, and last known telephone number, each and every employee or former employee of the Defendant Performance Contractors, Inc. who has filed a claim or charge of race and/or national origin discrimination, sexual discrimination, harassment, hostile work environment, or retaliation against any of the Defendants, whether with a local human rights agency, a state civil rights commission o[r] human rights commission, the Equal Employment Opportunity Commission, or informally with Defendants, . . . .

---

[3] The Court will address Request Nos. 60 and 61 *infra*; thus, they are not recounted here.

Interrogatory No. 16: In regard to each internal complaint (formal or informal, written or oral) of race and/or national origin discrimination, sexual harassment, sexual discrimination, hostile work environment and/or retaliation received by Defendants between January 1, 2012 and the present, please state the following: . . .[4]

Interrogatory No. 19: In regard to any and all complaints any Performance Contractors, Inc. supervisor, member of management, or Human Resources employee received regarding the conduct or behavior of Defendants Kendel Wood, Andrew Morel or James Ehlenbach, or regarding treatment received from any of these individuals, please state the following: . . .[5]

R[FP] No. 41: The complete investigatory file of any investigations into any complaints of discrimination, harassment or retaliation at any Performance Contractors, Inc. worksite from January 1, 2011 to the present.

R[FP] No. 53: Any and all documents reflecting employee complaints and/or investigations into employee complaints created or maintained by Andrew Morel at any time from January 1, 2014 through July 1, 2016.

R[FP] No. 68: All investigation files or documents related to any investigations into complaints of workplace discrimination and/or harassment that were reported at any time from January 1, 2013 to the present.

R[FP] No. 70: All records of complaints made at the "fab shop" and any actions PCI, Inc. took in response to such complaints, including but not

---

[4] The specific information requested by Interrogatory No. 16 pertains to general information regarding the subject internal complaints, as well as identifying information about the complainant and processing of the complaint. The Court finds it unnecessary to quote Interrogatory No. 16 in full.

[5] Plaintiff's specific requests in Interrogatory No. 19 concern the same type of information as requested in Interrogatory No. 16, though No. 19 requests less detail; the Court finds it unnecessary to quote Interrogatory No. 19 in full.

> limited to records of training in harassment and/or discrimination, as Sarah Borne testified to in her March 21, 2017 deposition.
>
> R[FP] No. 72: Any and all records regarding employee complaints and investigations into such complaints which were created or maintained by Andrew Morel at any time from January 1, 2013 to the present.

(Doc. 29, at 5-6). In short, plaintiff requests broad discovery relating to occurrences throughout the company at all worksites and corporate offices across the country for a lengthy timeframe in order to establish a corporate pattern of retaliatory and discriminatory misconduct.

Plaintiff's requested time period is reasonable. *See Miles v. Boeing Co.*, 154 F.R.D. 117, 119-20 (E.D. Penn. 1994) (illustrating the authority a court has to order discovery for a span of several years). Plaintiff's request largely seeks discovery materials for the time period beginning just under four years prior to plaintiff's termination through the present, which amounts to a total time period of approximately five years and eight months.[6] As plaintiff seeks to establish a pattern of discriminatory conduct, discovery materials relating to defendants' conduct both prior to plaintiff's own termination and subsequent to plaintiff's termination would be relevant in plaintiff's attempts to establish such a pattern. Plaintiff would be unable to establish a pattern of misconduct if plaintiff were permitted access only to those materials dealing with the six months during which she was employed by defendant Performance Contractors. Five years and eight months' worth of discovery is wholly reasonable in light of the type of harm alleged by plaintiff and plaintiff's need for discovery materials over a span of years in order to prove allegations

---

[6] Only one Request for Production requests materials dating back to January 1, 2011; the majority of the remaining unanswered Requests for Production request materials beginning with a date sometime after January 2012.

of patterned discrimination and retaliation. The Court further finds that Request for Production No. 41's timeframe dating back to January 1, 2011, is reasonable.

Plaintiff bears the burden of making a threshold showing that the requested discovery is relevant. *Hofer*, 981 F.2d at 380. Plaintiff has succeeded in doing so with respect to her requests for information pertaining to claims or complaints of race and/or national origin discrimination, sexual discrimination, harassment, hostile work environment, or retaliation. (Doc. 29, at 5). Because the chief issues in this case are discrimination and retaliation, discovery that may show the prevalence of either discrimination (on any basis) or retaliation (on any basis) would be relevant to proving that defendants have displayed a pattern of discriminatory and/or retaliatory conduct. The type of discrimination or retaliation alleged in each claim or complaint is of no consequence to the relevance of the information because the underlying issue is the fact of discriminatory or retaliatory conduct, irrespective of what that discrimination or retaliation is based on.

However, plaintiff has not proven that company-wide discovery would be relevant in this matter. Defendant Morel was the sole decision-maker in plaintiff's termination. The investigation into plaintiff's termination by the corporate human resources office was nothing more than an internal appeals process conducted after the decision to terminate plaintiff had already been made. Therefore, the corporate human resources office was not involved in the decision to terminate plaintiff in any sense and defendant Morel was the only party directly responsible for terminating plaintiff. Because there has been no showing that any individual other than defendant Morel was involved in the termination decision, it would be improper to order company-wide discovery. *Semple*, 566 F.3d at 794.

The Court recognizes that defendant Morel may have displayed the same discriminatory or retaliatory animus alleged herein at other jobsites where he may have been located. As previously stated, plaintiff's claims surround defendant Morel; as such, it is defendant Morel's conduct that is relevant, whether he acted at the Sioux City jobsite

or elsewhere. It would be improper to limit plaintiff's discovery only to the Sioux City jobsite because if Morel did, in fact, act in a discriminatory or retaliatory manner at other jobsites, that conduct would be just as relevant to proving plaintiff's claims as would be conduct at the Sioux City jobsite. Therefore, plaintiff is entitled to discovery materials at any location where defendant Morel acted within the relevant timeframe and relevant subject matter.

Finally, the Court turns to the Excel spreadsheet referenced in Request for Production No. 60 and the related emails referenced in Request for Production No. 61. The relevant Requests read as follows:

> R[FP] No. 60: A complete copy of any Excel spreadsheets containing information regarding employee complaints at any time from 2012 to the present, in their original metadata format, including but not limited to the Excel spreadsheet Sarah Borne testified to in her March 21, 2017 deposition.
>
> R[FP] No. 61: Any emails sent by or received by Sarah Borne regarding the establishment and/or use of any spreadsheets or other records used to record employee complaints, including the Excel spreadsheet Sarah Borne testified to in her March 21, 2017 deposition.

(Doc. 29, at 6). The Court is aware of only one Excel spreadsheet in existence that would fall under the aforementioned Requests for Production; defense counsel has advised that the portion of the spreadsheet relating to the Sioux City jobsite is in her possession. The Court is further aware that the spreadsheet is very short and is in electronic form. Plaintiff has made the threshold showing of relevancy; the spreadsheet is alleged to contain information regarding complaints made against defendants and the resolution of those complaints. Based on this information alone, it is possible to conclude that the information is relevant because the resolutions could indicate the presence or absence of patterned discrimination or retaliation. Without the spreadsheet itself, plaintiff has no other information upon which to base an argument of relevance, and this Court will not require

13

plaintiff to fabricate one. Given that there are very few complaints and a limited quantity of information logged on the spreadsheet, defendants' objection that essentially amounts to burdensomeness is unfounded. Furthermore, defendants' argument that the spreadsheet should not be subject to production simply because it was not maintained regularly and is thus incomplete is wholly devoid of merit. As such, the Court finds that defendants must produce the aforementioned Excel spreadsheet in its native form.

Therefore, the Court compels defendants to provide discovery responses pertaining only to Andrew Morel during the requested time period, at any jobsite, within the confines of claims, complaints, or investigations into claims or complaints of race and/or national origin discrimination, sexual discrimination, harassment, hostile work environment, or retaliation, including any files or complaints created by or maintained by defendant Morel. Defendants are not required to provide responses that pertain to complaints of those non-enumerated items that bear no relation to this case (e.g., safety complaints defendants received) or that would require waiver of a privilege. Additionally, defendants must produce the Excel spreadsheet referenced in Request for Production No. 60 and any emails referenced in Request for Production No. 61 that have not already been produced; if any individuals are listed as complainants on the Excel spreadsheet but their files would not be produced under the remainder of this Order, defendants must produce the complete files for those individuals. The parties shall have sixty (60) days from the date of this Order to depose additional witnesses in light of this Order and the resulting discovery responses. Each side may conduct up to three additional depositions; leave of Court is required for any additional depositions.

### B. *Award of attorneys' fees and costs*

Plaintiff asserts that defendants have engaged in "obstructionist" behavior in providing discovery responses such that defendants should be sanctioned under Federal

14

Rule of Civil Procedure 26(g) by requiring defendants to pay plaintiff's attorneys' fees and costs. (Doc. 29, at 22-23). Plaintiff's motion rests on the ill-supported notions of unsupported boilerplate objections, unsubstantiated objections, stubbornness, and frivolity. (*Id.*).

Judge Bennett has aptly noted that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26-37." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, No. C14-3041-MWB, 2017 WL 976626, at *13 (N.D. Iowa Mar. 13, 2017) (internal quotation marks and citations omitted). Although the Court agrees with this pronouncement, the Court does not agree with plaintiff's assertion that defendants have acted contrary to the Federal Rules of Civil Procedure in this case. Defendants' objections to discovery responses were tailored to the issues presented in the instant case, were adequately substantiated, and showed specified reasons for the objections, where appropriate. Although many of defendants' objections contain the same or similar language, the similarity of the discovery requests propounded lends support to the appropriateness of such similar objections. In fact, many of the discovery requests would likely yield repetitive responses if answered fully, which indicates that defendants' numerous similar objections are a mark of careful consideration of the discovery requests and recognition of the potentially repetitive responses. This Court will not impose sanctions where the party against whom sanctions are sought has done no wrong.

Plaintiff relies heavily on Judge Bennett's statements on sanctions in both *Liguria Foods* and *St. Paul Reinsurance* in arguing in favor of monetary sanctions. However, in neither case did Judge Bennett impose monetary sanctions, even though counsel in each case apparently exhibited more egregious conduct than is even alleged here. In fact, in *Liguria*, Judge Bennett refused to impose any sanctions at all (2017 WL 976626, at *17), while in *St. Paul Reinsurance*, he merely required offending counsel to author an article

15

for submission to multiple bar journals, as well as the court (*St. Paul Reinsurance*, 198 F.R.D. at 518). The Court reiterates that defendants have provided sufficient objections to plaintiff's discovery requests and, even if those objections were inadequate, the conduct alleged here does not rise to the level of conduct in either of the aforementioned cases, both of which determined that monetary sanctions would be a far too harsh penalty. The Court will not award sanctions against a party where the requesting party has failed to show non-compliance with the applicable rules.

Therefore, plaintiff's request for sanctions is denied.

## VI. CONCLUSION

The Court **grants** Plaintiff's Motion to Compel (Doc. 29) as follows: defendant is ordered to provide discovery responses pertaining only to Andrew Morel during the requested time period, at any jobsite, within the confines of claims, complaints, or investigations into claims or complaints of race and/or national origin discrimination, sexual discrimination, harassment, hostile work environment, or retaliation, including any files or complaints created or maintained by defendant Morel. Defendant is not required to provide responses that pertain to complaints of those non-enumerated items that bear no relation to this case (e.g., safety complaints defendants received) or that would require waiver of a privilege. Additionally, defendants must produce the Excel spreadsheet referenced in Request for Production No. 60 and any emails referenced in Request for Production No. 61 that have not already been produced; if any individuals are listed as complainants on the Excel spreadsheet but their files would not be produced under the remainder of this Order, defendant must produce the complete files for those individuals. The parties shall have sixty (60) days from the date of this Order to depose up to three additional witnesses each in light of this Order and the resulting discovery responses.

Plaintiff's motion for sanctions is **denied**.

**IT IS SO ORDERED** this 9th day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa